UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RODERICK COLEMAN, ) | No. CV 14-7991-PLA |
| Plaintiff, ) | |
| v. ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, ) | |
| Defendant. ) | |

## I.
## PROCEEDINGS

Plaintiff filed this action on October 17, 2014, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on November 10, 2014, and December 10, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 7, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

## II.

## BACKGROUND

Plaintiff was born on August 7, 1962. [Administrative Record ("AR") at 37, 221, 227.] He has past relevant work experience as an athletic trainer. [AR at 36, 76.]

On July 18, 2011, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that he has been unable to work since May 1, 2005.[1] [AR at 24, 221-26, 227-30.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 24, 166-68.] A hearing was held on September 5, 2013, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 49-82.] A vocational expert ("VE") also testified. [AR at 75-81.] On September 26, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from May 1, 2005, the alleged onset date, through September 26, 2013, the date of the decision. [AR at 24-38.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 16-17.] When the Appeals Council denied plaintiff's request for review on August 12, 2014 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

---

[1] Although plaintiff stated an alleged onset date of January 1, 2005, in his applications [AR at 221, 227], the ALJ determined that plaintiff had not engaged in substantial gainful activity since May 1, 2005 [AR at 26], and used that date as the alleged onset date. [AR at 24.] Additionally, although plaintiff dismissed his claims for a period of disability and DIB at the hearing [Joint Stipulation ("JS") at 2; AR at 61], the ALJ proceeded through her analysis as if these claims were still at issue. [See generally AR at 24, 38.]

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that his is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 1, 2005, the alleged onset date.[2] [AR at 26.] At step two, the ALJ concluded that plaintiff has the severe impairments of back disorder; pancreatitis related to alcohol abuse; substance abuse;

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2006. [AR at 26.]

and an affective mood disorder. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 27.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[4] as follows:

> He can lift twenty pounds occasionally and ten pounds frequently; he can stand, walk, and sit for six hours; he has no limitation with pushing and pulling; he can frequently climb ramps and stairs and frequently balance, kneel, and crawl; he can occasionally crouch and stoop; he cannot work at unprotected heights or be exposed to dangerous machinery; the claimant can understand and remember simple instructions to complete simple routine tasks; and he would work better with things than people and can have no public contact.

[AR at 28-29.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform his past relevant work as an athletic trainer. [AR at 36, 76-81.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "marker" (Dictionary of Occupational Titles ("DOT") No. 209.587-023), "assembler small products" (DOT No. 706.684-022), and "cleaner housekeeping" (DOT No. 323.687-014). [AR at 37-38, 76-78.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of May 1, 2005, through September 26, 2013, the date of the decision. [AR at 38.]

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when she: (1) considered the opinions of the non-examining physicians evaluating plaintiff's physical claims; and (2) considered the opinions of the non-examining physicians evaluating plaintiff's mental health claims. [JS at 4.]

As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

### A.   LEGAL STANDARD

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than

the [treating or examining] doctors', are correct." Id.

B.  **PLAINTIFF'S PHYSICAL IMPAIRMENTS**

On October 6, 2011, the consultative internal medicine examiner, Sohail K. Afra, M.D., evaluated plaintiff's physical impairments. [AR at 347-52.] Dr. Afra noted that plaintiff's "gait was very painful as he was walking," that he complained of "severe back pain" during the examination, and that he "was using a cane as a means of support for ambulation." [AR at 349.] When Dr. Afra asked plaintiff to walk without his cane, plaintiff was able to do so but his gait was noted to be "painful and antalgic." [AR at 351.] Dr. Afra ordered x-rays, and determined that the results were consistent with spondylolysis at L5. [Id.] He also noted "multiple calcifications over the left upper quadrant," suggesting "calcifications in the tail of the pancreas." [Id.] Based on plaintiff's history and the results of his physical examination, Dr. Afra found plaintiff could push, pull, lift, and carry fifty pounds occasionally, and twenty-five pounds frequently; could walk, stand, and sit for six hours of an eight-hour day; could occasionally bend, stoop, and crouch; could frequently kneel and crawl; could occasionally do such activities as climbing a ladder, working at heights, and walking on uneven terrain; and "has chosen to use a cane as a means of support; however this is not an absolute necessity for ambulation." [AR at 351-52.] The ALJ gave Dr. Afra's opinion "substantial but not significant weight," because Dr. Afra is an expert in his field and based his opinions on a personal examination of plaintiff. [AR at 32.] The ALJ noted, however, that "the longitudinal evidence of record supports a finding that the claimant is specifically limited as contained" in the RFC assessment. [Id.]

Other treatment records also reflect plaintiff's use of a cane. For instance, on October 1, 2011, TesiEllen Athans, Ph.D., the consulting psychological examiner, noted that plaintiff was using a cane for ambulation when he presented to her for evaluation. [AR at 340.] On November 26, 2012, Edward Byne, M.D., plaintiff's treating physician, completed a Physical Residual Functional Capacity Questionnaire in which he indicated plaintiff must use a cane or other assistive device while "engaging in occasional standing/walking" [AR at 412]; and, upon admission in May 2012 to the Olive View mental health facility, plaintiff had a cane in his possession [AR at

7

738] that was returned to him on discharge. [AR at 726.] The ALJ gave "little weight" to Dr. Byne's opinion because it was "inconsistent with the medical treatment records, which completely lack any specific long-term physical restrictions directed toward the claimant by a treating source." [AR at 35.] She also found Dr. Byne's opinions to be inconsistent "with the examination result of the physical consultative examiner," Dr. Afra, and without "support for such significant restrictions." [Id.]

On October 26, 2011, the reviewing physician, G. Taylor, M.D., assessed the medical records relating to plaintiff's physical impairments. [AR at 91-93.] Dr. Taylor's exertional limitations were consistent with the ALJ's RFC. [Compare AR at 28-29 with AR at 92-93.] Dr. Taylor specifically noted that he had assessed a lower lifting/carrying limitation than Dr. Afra because of Dr. Afra's findings of reduced lumbar flexion with pain, and reduced lumbar extension. [AR at 92; see also AR at 350.] Moreover, contrary to Dr. Afra's opinion that a cane is not an "absolute necessity," Dr. Taylor opined that a "[c]ane is necessary for support on prolonged and uneven terrain." [AR at 92.] The ALJ concluded that Dr. Taylor "adequately considered the evidence of record," and gave Dr. Taylor's opinion "great weight," because he had the benefit of reviewing the medical evidence of record, and his opinions "are consistent with the longitudinal evidence." [AR at 35.] Nevertheless, the ALJ did not include Dr. Taylor's finding that plaintiff needed to use an assistive device for "support on prolonged and uneven terrain," nor did she state any reason for not adopting this finding.

Plaintiff contends that despite giving only substantial, but not significant, weight to Dr. Afra's opinions, the ALJ "regurgitated" Dr. Afra's finding that a cane was not an "absolute necessity," "knew that the treating physician [Dr. Byne] prescribed the cane," and "failed to acknowledge the agreement of Dr. Taylor with the treatment record, the subjective complaints, and the lay statements that [plaintiff] needed a cane for prolonged standing and walking or for weight bearing on uneven surfaces for support."[5] [JS at 6-7 (citing AR at 32, 32, 36, 92).] Thus, although the ALJ

---

[5] Plaintiff interprets Dr. Taylor's finding that a cane is necessary "on prolonged and uneven terrain," to mean that a cane is necessary for "prolonged *standing and walking*" and for "weight
(continued...)

did not give "great weight" to the opinion of Dr. Afra, she nevertheless apparently accepted Dr. Afra's statement regarding the lack of absolute necessity for using a cane; and, although the ALJ gave great weight to Dr. Taylor's opinion, she failed to credit his statement that plaintiff needed a cane for support on "prolonged and uneven terrain," or to state legitimate reasons for rejecting that portion of Dr. Taylor's opinion. [JS at 7.] Plaintiff argues that because light exertional level work includes six hours of standing and walking in a day, which the Commissioner defines as "prolonged" [id. (citing Soc. Sec. Ruling ("SSR")[6] 83-12[7])], the ALJ's RFC "makes no allowance for a wide range of light work while using a cane for support during the day." [Id. (citing SSR 83-10).]

      An ALJ is not required to discuss all the evidence presented, but must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster her findings. See, e.g., Holohan, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)); see also Reddick, 157 F.3d at 722-23 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony

---

[5](...continued)
bearing on uneven surfaces for support." [See JS at 7.] The Court agrees that Dr. Taylor's statement that a cane is necessary for "*prolonged* and uneven terrain" is ambiguous.

[6] The Commissioner issues SSRs "to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

[7] SSR 83-12 notes that "*prolonged* standing or walking [is] contemplated for most light work." SSR 83-12 (emphasis added).

and reports"); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

Here, as discussed above, Dr. Afra noted plaintiff's use of a cane, as well as his painful and antalgic gait without the cane, and opined that use of a cane was not an "*absolute* necessity," an ambiguous finding at best as to whether plaintiff *might* need a cane at times; Dr. Taylor, who also discounted Dr. Afra's finding that plaintiff could lift and carry fifty pounds frequently as unsubstantiated by Dr. Afra's own physical findings, also found that plaintiff would need a cane "on prolonged and uneven terrain," which is also a somewhat ambiguous finding as worded[8]; and plaintiff's treating doctor, approximately one year after Dr. Afra and Dr. Taylor did their evaluations, opined that plaintiff needed a cane for even occasional standing/walking. Additionally, although she gave "great weight" to the opinions of Dr. Taylor, generally crediting his conclusions regarding plaintiff's lifting and carrying limitations over those of Dr. Afra, the ALJ failed to explain why she ignored Dr. Taylor's finding, corroborated by Dr. Byne, that plaintiff needed a cane for support -- thereby ignoring a significant and probative finding.

Based on the foregoing, the ALJ failed to provide legally sufficient reasons for not including Dr. Taylor's finding regarding plaintiff's need for a cane in her RFC determination. Remand is warranted.

/

/

---

[8] See supra note 5.

C.  **PLAINTIFF'S MENTAL IMPAIRMENTS**

With respect to plaintiff's mental impairments, the ALJ found that plaintiff "can understand and remember simple instructions to complete simple routine tasks; and he would work better with things than people and can have no public contact." [AR at 28-29.]

Plaintiff contends that the ALJ failed to explain "why she did not incorporate the assessment of a non-demanding work environment" as found by the State Agency medical consultant, Evelyn Adamo, Ph.D., and the State Agency medical consultant on reconsideration, R. Singh, M.D. [JS at 13-14.] He also claims that there is no evidence to suggest "that the work identified by the vocational expert and adopted by the ALJ would have classification as non-demanding." [JS at 14.] Defendant generally contends that the ALJ's restriction to unskilled jobs, which "deal with things rather than people," "should be categorized as undemanding, non-stressful work." [JS at 16 (citing AR at 77; 20 C.F.R. §§ 404.1568(a), 416.968(a) for the proposition that "[u]nskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time").] Plaintiff responds that there is no evidence to support defendant's position that work as a marker, small products assembler, or housekeeper constitute non-demanding work. [JS at 17.]

Here, Dr. Adamo found plaintiff markedly limited in his ability to carry out detailed instructions, and moderately limited in his ability to maintain attention and concentration for extended periods. [AR at 94.] She found that "[s]lowing and depression will cause significant restrictions" in sustained concentration and persistence; and noted that plaintiff "retains the capacity to sustain only simple, repetitive work at an acceptable pace." [AR at 94-95.] Additionally, she found that although plaintiff is moderately limited in his ability to respond appropriately to changes in the work setting, he "is able to cope with normal work changes in a non-demanding work environment." [AR at 95.] Dr. Singh's findings were identical to Dr. Adamo's findings. [AR at 127-28.] The ALJ gave Dr. Adamo's opinions "substantial but not significant weight as they are generally consistent with the claimant's mental status examinations of record and the findings of the psychological consultative examiner. However, the longitudinal evidence of record supports a finding that the claimant is specifically mentally limited as contained in this

decision's [RFC], which does contain social interaction restrictions."[9] [AR at 36.] The ALJ gave Dr. Singh's opinion the same weight as it was "generally repetitious" of Dr. Adamo's opinion. [Id.] The ALJ did not mention or discuss the finding that plaintiff would be able to cope with normal work changes, but in a non-demanding work environment.

Because the matter is being remanded for reconsideration of plaintiff's physical limitations, the ALJ on remand shall provide legitimate reasons, supported by substantial evidence, for either accepting, discounting, or rejecting Dr. Adamo and Dr. Singh's opinion regarding plaintiff's ability to "cope with normal work changes in a non-demanding work environment," and, if warranted, consider the effect, if any, of such a limitation on plaintiff's RFC and ability to perform other work in the national economy.[10]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence

---

[9] Both Dr. Adamo and Dr. Singh found that plaintiff had no social interaction limitations. [AR at 95, 127.]

[10] Plaintiff also notes that consulting examiner Dave Jacobs, Ph.D., found marked limitations in plaintiff's ability to complete a workday or workweek, and in his ability to sustain concentration, persistence, and/or pace. [JS at 13 (citing AR at 93).] The disability evaluation analyst asked Dr. Jacobs to clarify his mental residual functional capacity assessment because the consulting examiner only assigned moderate limits and plaintiff "does not appear severely impaired on ADL forms." [AR at 105.] The analyst determined, however, that Dr. Jacobs was not available and a new review was needed. [AR at 103.] Accordingly, the file was then sent to Dr. Adamo, who provided her own evaluation. [AR at 105.] Under these circumstances, the Court finds that plaintiff's complaint that the ALJ failed to explain the weight given to Dr. Jacobs' opinion [JS at 13] is without merit.

were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting Dr. Taylor's opinion that plaintiff needs a cane for "support on prolonged and uneven terrain," the ALJ on remand shall address this finding in light of all of the evidence of record, and obtain clarification of this finding if warranted. Second, the ALJ shall reconsider plaintiff's mental impairments, specifically with regard to the opinion of Dr. Adamo and Dr. Singh that plaintiff "is able to cope with normal work changes in a non-demanding work environment." In assessing the physical and mental medical opinion evidence, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any significant probative portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[11]

/
/
/
/
/
/
/
/
/

---

[11] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.

# VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 20, 2015

                                            PAUL L. ABRAMS
                                  UNITED STATES MAGISTRATE JUDGE